[No. B196603. Second Dist., Div. Five. Aug. 11, 2008.]

HENRY AVILA, Plaintiff and Appellant, v.
CONTINENTAL AIRLINES, INC., Defendant and Respondent.

Counsel

Mancini & Associates, Marcus A. Mancini; Benedon & Serlin, Gerard M. Serlin and Kelly R. Horwitz for Plaintiff and Appellant.

Law Offices of Steven Drapkin and Steven Drapkin for Defendant and Respondent.

Opinion

MOSK, J.—

## INTRODUCTION

Plaintiff and appellant Henry Avila (plaintiff) appeals from a summary judgment entered against him on his claims that he was discharged from his employment with Chelsea Food Services (Chelsea), a division of defendant and respondent Continental Airlines, Inc. (Continental), in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.),[1] California's Moore-Brown-Roberti Family Rights Act (§ 12945.2; CFRA), and public policy. We affirm the summary adjudication of plaintiff's FEHA claims because plaintiff failed to raise a triable issue as to whether the Continental employees who made the decision to discharge him knew of his alleged disability at the time they made that decision. We reverse the summary adjudication of plaintiff's CFRA and public policy claims, however, because there are triable issues of fact as to whether plaintiff submitted material to Continental that constituted a request for CFRA-qualifying leave. Although the forms plaintiff asserts he submitted to Continental were insufficient to put Continental on notice that he was disabled for purposes of FEHA, they could suggest that plaintiff had suffered a "serious medical condition" as defined in CFRA and could be viewed as a request for leave under CFRA. If, as plaintiff's evidence shows, he was terminated because of absences for a period that was subject to a request for CFRA leave, plaintiff has a CFRA claim.

## BACKGROUND

### A. Factual Background[2]

Chelsea was in the business of airline food catering at Los Angeles International Airport (LAX) and other locations. Plaintiff worked for Chelsea

---

[1] Statutory references are to the Government Code unless stated otherwise. We sometimes refer to Chelsea and Continental collectively as Continental.

[2] We state the facts consistent with the rules that "we view the evidence in the light most favorable to plaintiffs . . ." and "liberally construe plaintiffs' evidentiary submissions and strictly scrutinize defendants' own evidence, in order to resolve any evidentiary doubts or

from 1998 through January 2005. Chelsea's attendance policy in effect throughout plaintiff's employment stated that an employee would be terminated if he or she accrued seven or more "recordable" absences in any rolling 12-month period. A "recordable" absence was any absence other than specified nonrecordable incidents. Approved short-term disability and approved family medical leave both were nonrecordable incidents if "the need for absences ha[d] been pre-arranged and/or required documentation ha[d] been submitted and approved by the employee's manager prior to the absence." Although the attendance policy did not so state, a Chelsea human resources manager testified that absences due to emergency situations that were not prearranged could later be excused. An absence was recorded for each day of missed work unless the employee provided a doctor's note justifying the absence for medical reasons. If a doctor certified the employee's illness, only one absence would be recorded, even if the employee was absent for multiple days. Plaintiff was terminated in 2001 for violating the attendance policy, but was later reinstated. He had been warned about his attendance on other occasions.

In December 2004, plaintiff was hospitalized for acute pancreatitis and missed four days of work. Plaintiff testified that, when he returned to work, he provided two medical forms from Kaiser Permanente (the Kaiser forms) establishing that he had been hospitalized.[3] Plaintiff also testified that, after he returned to work, he told approximately "50 persons"—his "close friends probably"—that he had been sick. He did not talk to his supervisors, however. Plaintiff was charged two recordable absences for his illness and recuperation, bringing his total number of recordable absences to six for the relevant 12-month period.

During January 2005, plaintiff incurred another recordable absence. On January 18, 2005, Chelsea's human resources manager, Daysi Bellamy, determined that plaintiff had been absent from work seven times in the preceding 12 months, and on that basis determined that plaintiff would be suspended and terminated. The absences relied on by Bellamy in reaching that decision are set forth on a monthly employee attendance review dated January 18, 2005, which document does not set forth the reasons for any of plaintiff's absences. Bellamy's decision to discharge plaintiff was approved by

---

ambiguities in plaintiffs' favor." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517].) Evidentiary objections not made or ruled upon are deemed waived. (Code Civ. Proc., § 437c, subds. (b)(5), (d); *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1186–1187, fn. 1 [91 Cal.Rptr.2d 35, 989 P.2d 121], overruled on another ground in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

[3] Plaintiff asserts in his brief on appeal that it is undisputed that the Kaiser forms were received by Chelsea and placed in plaintiff's personnel file. Continental, on the other hand, asserts that plaintiff misrepresents that one of the Kaiser forms was "found" in plaintiff's personnel file. The record is insufficient for us to evaluate Continental's claim, and it is unnecessary for us to do so to resolve plaintiff's appeal.

Chelsea's LAX general manager Judy Tanes and a human resources manager for Continental in Houston, neither of whom had any independent knowledge of plaintiff's employment situation. The next day, at Bellamy's direction, assistant operations manager Leonard Johnson suspended plaintiff from his employment and told plaintiff that his employment probably would be terminated. Plaintiff told Johnson that he had been "sick."

Sometime prior to January 25, 2005, Bellamy informed Johnson that a decision had been made to terminate plaintiff's employment. Bellamy and Johnson met with plaintiff on January 25 and informed him that he was discharged, effective immediately. Plaintiff testified that, after he was told his employment was being terminated, he told Bellamy and Johnson at that meeting that he had been hospitalized with pancreatitis. The next day, plaintiff and his nephew prepared and hand-delivered to Chelsea a letter to general manager Judy Tanes explaining plaintiff's illness, providing the medical records related to plaintiff's hospitalization, and requesting plaintiff's reinstatement. Plaintiff also requested an appeal hearing pursuant to company policy. A divided company appeal board upheld the termination.

### B. *Procedural Background*

Plaintiff commenced this action in October 2005. By late 2006, the only surviving claims were against Continental for (1) disability discrimination in violation of FEHA; (2) failure reasonably to accommodate plaintiff's disability in violation of FEHA; (3) wrongful termination in retaliation for plaintiff's exercise of his rights under CFRA; and (4) a *Tameny*[4] claim for wrongful termination in violation of public policy. Continental moved for summary judgment. The trial court granted Continental's motion, concluding that (1) because Continental had no knowledge of plaintiff's disability and therefore did not terminate him because of that disability, plaintiff had no valid FEHA claim; (2) because plaintiff did not request reasonable accommodation, he could not maintain a FEHA failure-to-accommodate claim; (3) plaintiff's CFRA claim failed because plaintiff did not request leave or an accommodation under CFRA for his illness; and (4) plaintiff's *Tameny* claim could not proceed because that claim was predicated on his insufficient claims under FEHA and CFRA. The trial court entered judgment for Continental. Plaintiff timely appealed.

## DISCUSSION

### A. *Standard of Review*

On an appeal from a grant of summary judgment, we examine the record de novo to determine whether triable issues of material fact exist. (*Saelzler v.*

---

[4] *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330].

*Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) We view the evidence in a light favorable to, and resolve any evidentiary doubts or ambiguities in favor of, the nonmoving party. (*Id.* at pp. 768–769.) The moving party bears the burden to demonstrate "that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 850, fn. omitted.) If the moving party makes a prima facie showing, the burden shifts to the party opposing summary judgment "to make [its own] prima facie showing of the existence of a triable issue of material fact." (*Ibid.*) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.*, fn. omitted.)

### B. *FEHA Claims*

#### 1. *The Disability Discrimination Claim*

 FEHA provides, in relevant part, that "[i]t shall be an unlawful employment practice . . . : [¶] (a) For an employer, because of the . . . physical disability [or] medical condition . . . of any person, to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . ." (§ 12940, subd. (a); see *Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 925–926 [70 Cal.Rptr.3d 382, 174 P.3d 200].) FEHA proscribes two types of disability discrimination: (1) discrimination arising from an employer's intentionally discriminatory act against an employee because of his or her disability (referred to as disparate treatment discrimination), and (2) discrimination resulting from an employer's facially neutral practice or policy that has a disproportionate effect on employees suffering from a disability (referred to as disparate impact discrimination). (*Knight v. Hayward Unified School Dist.* (2005) 132 Cal.App.4th 121, 128–129 [33 Cal.Rptr.3d 287].) In opposing summary judgment, plaintiff asserted only disparate treatment discrimination.

 To establish a prima facie case for disparate treatment discrimination, plaintiff must show (1) he suffers from a disability, (2) he is otherwise qualified to do his job, (3) he suffered an adverse employment action, and (4) the employer harbored discriminatory intent. (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 [100 Cal.Rptr.2d 352, 8 P.3d 1089]; *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 342 [77 Cal.Rptr.3d 654] [" ' "[T]he plaintiff must prove the ultimate fact that the defendant engaged in intentional discrimination." ' "]; *Knight v. Hayward Unified School Dist., supra*, 132 Cal.App.4th at p. 128; *Faust v. California Portland Cement Co.*

(2007) 150 Cal.App.4th 864, 886 [58 Cal.Rptr.3d 729].) "An adverse employment decision cannot be made 'because of' a disability, when the disability is not known to the employer." (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 236 [66 Cal.Rptr.2d 830]; see also *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1046 [32 Cal.Rptr.3d 436, 116 P.3d 1123] [no FEHA retaliation claim "where there is no evidence the employer knew" that the employee was engaging in protected conduct]; *Trop v. Sony Pictures Entertainment Inc.* (2005) 129 Cal.App.4th 1133, 1145 [29 Cal.Rptr.3d 144] ["An employee cannot make out a prima facie case of discrimination based on pregnancy under FEHA in the absence of evidence the employer knew the employee was pregnant."]; *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 70 [105 Cal.Rptr.2d 652] [" 'Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.' "].)

To prevail on summary judgment, Continental was required to show either that (1) plaintiff could not establish one of the elements of the FEHA claim, or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment. (*Guz v. Bechtel National, Inc., supra,* 24 Cal.4th at pp. 355–356; *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097–1098 [38 Cal.Rptr.3d 240]; see 3 Chin, et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2008) ¶ 19:728, p. 19-81.) Continental submitted evidence and the trial court concluded that plaintiff could not prove discriminatory intent because Bellamy and Johnson, the Continental employees who made the decision to discharge plaintiff, did not know of plaintiff's disability. The issue on appeal is thus whether plaintiff's evidence raised a triable issue of material fact with respect to whether Bellamy and Johnson knew of plaintiff's disability when they decided to discharge him. Plaintiff relies on evidence that (1) he "provided his supervisors medical forms confirming he had been hospitalized," (2) he "told numerous co-workers that he had had pancreatitis," (3) he asked Bellamy and the review board "why he was being penalized for his hospitalization," and (4) he and his nephew wrote a letter to Chelsea general manager Judy Tanes detailing his medical problems and attaching his medical records. Plaintiff's evidence fails to raise a triable issue of material fact.

### a. *The Kaiser Forms*

#### (i) *Relevant Background*

The Kaiser forms are printed forms from Kaiser Permanente called "Documentation of Medical Impairment" forms. Plaintiff testified that he submitted two Kaiser forms to Chelsea. One Kaiser form, dated December 15, 2004, stated that plaintiff visited the Kaiser Permanente South Bay

Medical Center for an illness or injury that began that same day. Under a section with the heading "Employer Instructions—Recommended Impact on Work," the form stated that plaintiff was unable to work for one day. The second Kaiser form, dated December 19, 2004, indicated that plaintiff was admitted to the hospital on December 16 and discharged on December 19. In the section headed "Employer Instructions—Recommended Impact on Work," the form stated that plaintiff was unable to work for five days, beginning on December 16 and ending on December 21. A handwritten comment says, "OK to return to work on 12/21/04." Neither Kaiser form indicated that plaintiff required any restrictions on his work activities going forward, and neither contained diagnostic or other information to indicate the nature of plaintiff's illness or injury. Plaintiff testified that he gave the Kaiser forms to the manager on duty at Chelsea when he returned to work, although he could not recall to whom he gave the forms and admitted that he might have left the forms on the manager's desk rather than personally handing them to someone. The trial court concluded that the Kaiser forms were insufficient to raise a triable issue because they did not identify plaintiff's illness "let alone a 'disability,' " and plaintiff's testimony about "to whom he gave the Kaiser form . . . is at best equivocal and at worst contradictory and inconclusive."

(ii) *Discussion*

 Under section 12926, subdivision (k), " '[t]he touchstone of a qualifying [physical] disability is an actual or perceived physiological disorder which affects a major body system and limits the individual's ability to participate in one or more major life activities.' " (*Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344, 353–354 [118 Cal.Rptr.2d 443], quoting *Cassista v. Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1061 [22 Cal.Rptr.2d 287, 856 P.2d 1143].) Physical disabilities do not include "sexual behavior disorders, compulsive gambling, kleptomania, pyromania, or psychoactive substance use disorders resulting from the current unlawful use of controlled substances or other drugs." (§ 12926, subd. (k)(6).)

As noted above, to show that Continental acted with discriminatory intent, plaintiff was required to produce evidence that the Continental employees who decided to discharge him knew of his disability. (*Brundage v. Hahn, supra,* 57 Cal.App.4th at pp. 236–237.) "While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts. 'Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the [FEHA].' [Citations.]" (*Id.* at p. 237.)

The Kaiser forms did not contain sufficient information to put Continental on notice that plaintiff suffered from a disability.[5] Reading the Kaiser forms most favorably to plaintiff, the forms communicated only that plaintiff was unable to work on four workdays (Dec. 15, 16, 17 & 20) due to an unspecified condition, and that plaintiff was hospitalized for three days. The forms did not specify that plaintiff suffered from pancreatitis or any other condition that qualified as a disability under section 12926, subdivision (k). Informing Continental merely that plaintiff had been hospitalized was not sufficient to put Continental on notice that plaintiff was suffering from a qualifying disability. (See *Burch v. Coca-Cola Co.* (5th Cir. 1997) 119 F.3d 305, 317 [citing cases under ADA[6] rejecting proposition that "any condition requiring temporary hospitalization is disabling . . ."].) Plaintiff might have been hospitalized for reasons other than disability—for example, he might have had minor elective surgery, or he might have sought preventive treatment for some other condition that was not disabling. From Continental's point of view, the fact that plaintiff was hospitalized for only three days and then returned to work days later without restrictions or accommodations is consistent with the conclusion that plaintiff did not suffer from a condition that qualifies as a disability.

Moreover, in his response to Continental's separate statement of undisputed facts, plaintiff did not assert that the evidence raised a triable issue that Bellamy and Johnson knew that plaintiff was *disabled*—rather, plaintiff asserted that his evidence established that "Johnson and Bellamy knew Plaintiff was *sick*." (Italics added.) "Not every illness qualifies as [a] disability," however. (*Mont-Ros v. City of West Miami* (S.D.Fla. 2000) 111 F.Supp.2d 1338, 1352 [applying ADA]; see also *Arteaga v. Brink's, Inc., supra,* 163 Cal.App.4th at p. 348 ["Pain alone does not always constitute or establish a disability."].) Accordingly, that plaintiff suffered a disability was not "the only reasonable interpretation of" the information in the Kaiser forms. (*Brundage v. Hahn, supra,* 57 Cal.App.4th at p. 237 [employer's knowledge that employee "had taken a substantial amount of leave for medical appointments" insufficient to establish employer's knowledge of disability]; see also *Crandall v. Paralyzed Veterans of America* (D.C.Cir. 1998) 330 U.S. App.D.C. 381 [146 F.3d 894, 896–897] ["the employer must have acted with an awareness of the disability itself, and not merely an awareness

---

[5] For purposes of this appeal, Continental does not dispute that plaintiff's bout of pancreatitis was a physical disability within the meaning of FEHA. (See *Diaz v. Federal Express Corp.* (C.D.Cal. 2005) 373 F.Supp.2d 1034, 1046–1048 [temporary, nonchronic conditions may be disabilities under FEHA].)

[6] Federal Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.).

of some deficiency in the employee's performance that might be a product of an unknown disability"].)

### b. *Plaintiff Told Other Employees*

Plaintiff testified that, when he returned to work, "[p]eople—they always ask why you were sick. Obviously, I have to tell them why I was sick." Plaintiff could not "mention names, because probably I would have to tell you 50 person [*sic*]" who were plaintiff's "close friends probably." Plaintiff specified, however, that he did *not* discuss his pancreatitis with Chelsea's managers, including Johnson. Plaintiff believed he did not "have to tell the managers because the managers already know by the letters" (presumably, the Kaiser forms).

Plaintiff asserts that this testimony raised a triable issue whether Bellamy and Johnson knew of his alleged disability. We disagree. Plaintiff testified he did not tell Johnson or any of Chelsea's other managers that he suffered from pancreatitis. Plaintiff submitted no evidence that any of the "close friends" whom plaintiff told "why [he] was sick" actually relayed or had a duty to relay that information to Bellamy, Johnson or anyone else involved in the decision to discharge plaintiff. There is no basis to impute to Bellamy or Johnson actual knowledge of plaintiff's statements to his coworkers concerning his disability. (See *Morgan v. Regents of University of California, supra,* 88 Cal.App.4th at p. 73 [evidence that employer's decision makers were not aware that the plaintiff had filed a grievance was not controverted on summary judgment by evidence that other supervisory employees, who were not involved in the adverse employment decisions, knew of plaintiff's grievance]; see also *Woodman v. WWOR-TV, Inc.* (2d Cir. 2005) 411 F.3d 69, 87 [in federal age discrimination case, plaintiff's testimony that she told other employees her age was insufficient to raise triable issue; "[t]o defeat summary judgment, [plaintiff] was obliged to do more than produce evidence that someone at [employer company] knew her age. [Plaintiff] was obliged to offer evidence indicating that persons who actually participated in her termination decision had such knowledge"]; *Hedberg v. Indiana Bell Telephone Co., Inc.* (7th Cir. 1995) 47 F.3d 928, 931–932 [immediate supervisor's knowledge of employee's disability not imputed to decision maker in higher management]; *Rogers v. CH2M Hill, Inc.* (M.D.Ala. 1998) 18 F.Supp.2d 1328, 1337–1338 [in ADA case, nonmanagement employee's knowledge of fellow employee's depression "in no way reflect[s] the knowledge of" employer].)

Plaintiff argues in his reply brief that knowledge of his disability could be "imputed to a decision-maker where others who provided information to the decision-maker knew of the [disability], or where it was reasonable that the

decision-maker would know of such [disability]." The cases plaintiff relies upon do not support that proposition. Rather, two of those cases hold that when an employment decision is influenced by several people, "a decision maker's ignorance does not 'categorically shield the employer from liability if other substantial contributors to the decision bore the requisite animus. [Citation.]' " (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 421 [69 Cal.Rptr.3d 1], quoting *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 110 [16 Cal.Rptr.3d 717].) Plaintiff submitted no evidence that any of the coworkers to whom he spoke about "why [he] was sick" was a "substantial contributor" to the decision to discharge him. The third case relied upon by plaintiff, *Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216 [51 Cal.Rptr.3d 206], disapproved on another ground in *Jones v. The Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158 [72 Cal.Rptr.3d 624, 177 P.3d 232], held that a plaintiff had pleaded sufficient facts from which to infer a causal link between the employer's adverse employment action and the plaintiff's protected activity when the plaintiff alleged that the employer's decision maker took the adverse action "within days" of the plaintiff's protected activity and told other management personnel that the plaintiff was a "troublemaker." (*Taylor v. City of Los Angeles Dept. of Water & Power, supra*, 144 Cal.App.4th at p. 1236.) No such facts are in evidence in this case.

### c. *Posttermination Statements*

Plaintiff testified that, after he was informed by Bellamy and Johnson that his employment was terminated, he informed Bellamy that he had been hospitalized with pancreatitis. Further, the day after he met with Bellamy and Johnson, he submitted a letter to general manager Judy Tanes explaining that plaintiff had been hospitalized with acute pancreatitis. Plaintiff submitted with the letter medical records related to his hospitalization. Plaintiff also testified that he told the company appeal board that he had had pancreatitis.

None of this evidence assists plaintiff. Evidence that a decision maker learned of a plaintiff's disability *after* deciding to take adverse employment action is not probative of whether the decision maker was aware of the plaintiff's disability when he or she made the decision. Such evidence is irrelevant to determining whether the decision maker acted from a discriminatory animus. (*Brundage v. Hahn, supra*, 57 Cal.App.4th at pp. 236–237 [decision maker must be aware of disability "when the adverse employment decision was made"]; see also *Hedberg v. Indiana Bell Telephone Co., Inc., supra*, 47 F.3d at pp. 931–932 [no discrimination when decision maker was informed of plaintiff's disability after making decision to discharge him].)

The trial court properly granted summary judgment on plaintiff's FEHA discrimination claim.

### 2. *FEHA Failure-to-Accommodate Claim*

■ Section 12940, subdivision (m) provides that it is an unlawful employment practice "[f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." "Two principles underlie a cause of action for failure to provide a reasonable accommodation. First, the employee must request an accommodation. [Citation.] Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith. [Citation.]" (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54 [43 Cal.Rptr.3d 874]; see generally 2 Chin, et al., California Practice Guide: Employment Litigation, *supra*, ¶ 9:2346, p. 9-184.) The trial court granted summary judgment on the ground that plaintiff failed to raise a triable issue that he requested an accommodation from Continental. In his response to Continental's separate statement, plaintiff cited evidence that (1) he called in sick on December 15, 16 and 19 (the latter call for Monday, Dec. 20); and (2) he submitted a medical excuse (the Kaiser forms) for his relevant absences.[7]

Section 12940, subdivision (m) requires an employer to accommodate only a *"known* physical . . . disability." (Italics added; see also Cal. Code Regs., tit. 2, § 7293.9.) The employee bears the burden of giving the employer notice of his or her disability. (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1222 [37 Cal.Rptr.3d 899].) Although no particular form of request is required (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 954 [62 Cal.Rptr.2d 142]), " '[t]he duty of an employer reasonably to accommodate an employee's handicap does not arise until the employer is "aware of respondent's disability and physical limitations." [Citations.]' " (*Id.* atpp. 949–950.) " '[T]he employee can't expect the

---

[7] On appeal, plaintiff also relies on evidence of his statements to coworkers; his posttermination statements to Bellamy, Johnson and the review board; and his posttermination letter to Judy Tanes to argue that triable issues precluded summary judgment on his failure-to-accommodate claim. Plaintiff forfeited his contentions that such evidence raised a triable issue by failing to cite or argue that evidence with respect to this issue in the trial court. (Code Civ. Proc., § 437c, subd. (p)(2); Cal. Rules of Court, rule 3.1350(f); see *Expansion Pointe Properties Limited Partnership v. Procopio, Cory, Hargreaves & Savitch, LLP* (2007) 152 Cal.App.4th 42, 54 [61 Cal.Rptr.3d 166] [" '*possible theories that were not fully developed or factually presented* to the trial court cannot create a "triable issue" on appeal' "].) In any event, as noted above, this evidence was insufficient to put Continental's decision makers on notice of plaintiff's disability prior to his termination.

employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge. . . .' [Citation.]" (*Id.* at p. 954.)

As discussed above, the information in the Kaiser forms was not sufficient to put Continental on notice that plaintiff suffered a disability covered by FEHA. Further, evidence that plaintiff "called in sick"—without further evidence regarding to whom at Continental plaintiff spoke or what plaintiff said—is inadequate to support a conclusion that plaintiff informed Continental of his disability or the physical limitations it caused, such that Continental was on notice that plaintiff required accommodation. Plaintiff cites no authority to the contrary. The trial court properly granted summary judgment on plaintiff's FEHA claims.

Continental terminated plaintiff for being absent. In a case of medical emergency, plaintiff might have shown after the fact that his absence was due to a qualifying disability, but plaintiff in this case did not timely present to the appropriate managers information that his absence was due to a qualifying disability. The termination therefore does not violate FEHA.

C. *CFRA Claim*

■ Plaintiff asserts that he was discharged in retaliation for taking leave under CFRA. CFRA "is intended to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security." (*Nelson v. United Technologies* (1999) 74 Cal.App.4th 597, 606 [88 Cal.Rptr.2d 239].) In general, CFRA makes it an unlawful employment practice for an employer of 50 or more persons to refuse to grant an employee's request to take up to 12 "workweeks" in any 12-month period for family care and medical leave. (§ 12945.2, subds. (a), (c)(2)(A); see generally *Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 208–209 [74 Cal.Rptr.3d 570, 180 P.3d 321] (lead opn. of Kennard, J.).) CFRA also prohibits an employer "to refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of" his or her "exercise of the right to family care and medical leave provided by subdivision (a)." (§ 12945.2, subd. (*l*)(1); see also Cal. Code Regs., tit. 2, § 7297.7,

subd. (a).) This antidiscrimination provision prevents employers from counting CFRA leave as absences under a no-fault attendance policy. (Cal. Code Regs., tit. 2, § 7297.10, incorporating by reference, inter alia, 29 C.F.R. § 825.220(d) (2008).)[8]

■ "Family care and medical leave" includes "[l]eave because of an employee's own serious health condition that makes the employee unable to perform the functions of the position of that employee," with certain exceptions relating to pregnancy or childbirth. (§ 12945.2, subd. (c)(3)(C).) A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves either of the following: [¶] (A) Inpatient care in a hospital, hospice, or residential health care facility. [¶] (B) Continuing treatment or continuing supervision by a health care provider." (§ 12945.2, subd. (c)(8); see Cal. Code Regs., tit. 2, § 7297.0, subd. (o).) That is, "for an employee to be entitled to a medical leave for her own serious health condition, the condition must cause her to be unable to work at all or unable to perform one or more of the essential functions of her position." (*Neisendorf v. Levi Strauss & Co., supra*, 143 Cal.App.4th at pp. 516–517.)

■ "[T]he elements of a cause of action for retaliation in violation of CFRA . . . are as follows: (1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination . . . , because of her exercise of her right to CFRA leave." (*Dudley v. Department of Transportation, supra*, 90 Cal.App.4th at p. 261; accord, *Faust v. California Portland Cement Co., supra*, 150 Cal.App.4th at p. 885.) The trial court granted summary judgment on the ground that plaintiff's only evidence that he requested CFRA leave was that he called in sick, which the trial court deemed to be insufficient as a matter of law.

### 1. *Triable Issue of Adequate Request*

As with his FEHA failure-to-accommodate claim, plaintiff cited in his response to Continental's separate statement evidence that (1) he called in

---

[8] The regulations promulgated by California's Fair Employment and Housing Commission (the Commission) under CFRA incorporate by reference federal regulations interpreting the federal Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 et seq.) (FMLA), to the extent the federal regulations are not inconsistent with California law. (Cal. Code Regs., tit. 2, § 7297.10.) FMLA provides protections to employees needing family or medical leave similar to those provided by CFRA. California courts applying CFRA frequently rely on federal decisions applying FMLA. (*Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal.App.4th 509, 514, fn. 1 [49 Cal.Rptr.3d 216]; *Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 261 [108 Cal.Rptr.2d 739].) We apply the California authorities and cite FMLA authorities only as additional persuasive material. We note that FMLA and CFRA authorities may diverge in certain respects. (See, *post*, at p. 1260, fn. 12.)

sick on December 15, 16 and 19 (for Dec. 20); and (2) he submitted a medical excuse (the Kaiser forms) for his relevant absences.[9] Defendant argues that neither plaintiff's calling in sick nor the Kaiser forms constituted a "request" for CFRA leave because in neither case did plaintiff "request" or "ask for" leave.

That plaintiff called in sick was, by itself, insufficient to put Continental on notice that he needed CFRA leave for a serious health condition. (See *Gibbs v. American Airlines, Inc.* (1999) 74 Cal.App.4th 1, 9 [87 Cal.Rptr.2d 554] ["an employee who calls in sick to work for several days while taking antibiotics for an apparent flu has not provided her employer with 'notice sufficient to make the employer aware that the employee needs CFRA-qualifying leave' "]; see also *Stevens v. Department of Corrections* (2003) 107 Cal.App.4th 285, 292 [132 Cal.Rptr.2d 19] ["in the context of leave for an employee's own serious health condition, the mere notice that an employee seeks to use sick time is insufficient to place the employer on notice that the employee seeks CFRA-qualifying leave"] [dictum].)

■ Plaintiff, however, also testified that he provided Chelsea with the Kaiser forms. Plaintiff said referring to the Kaiser forms, "I gave it to the manager on duty. I don't remember who. Usually it's left on the desk, and I don't know who takes it from there." The December 19 Kaiser form indicated that plaintiff had been hospitalized for three days. As noted above, CFRA defines as a "serious health condition" any "illness, injury, impairment, or physical or mental condition that involves . . . : [¶] . . . [i]npatient care in a hospital." (§ 12945.2, subd. (c)(8); see Cal. Code Regs., tit. 2, § 7297.0, subd. (*o*).) Whether notice is sufficient under CFRA is a question of fact. (See *Manuel v. Westlake Polymers Corp.* (5th Cir. 1995) 66 F.3d 758, 764 [under FMLA, "[w]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case"]; *Mora v. Chem-Tronics, Inc.* (S.D.Cal. 1998) 16 F.Supp.2d 1192, 1217 [under FMLA].) The issue is thus whether a reasonable trier of fact (see *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 846) could conclude that (1) plaintiff submitted the December 19 Kaiser form to Chelsea; and (2) if so, whether doing so constituted a "request" for leave for a CFRA-qualifying purpose.

### a. *Whether Plaintiff Submitted the Kaiser Forms*

Continental argues, and the trial court concluded, that plaintiff's testimony that he submitted the Kaiser forms to Chelsea was not substantial evidence that he did so because the testimony was "at best equivocal and at

---

[9] As with his FEHA failure-to-accommodate claim, plaintiff also relies on other, additional evidence in his briefs on appeal. We do not consider such evidence in reaching our conclusion. (See fn. 7, *ante.*)

worst contradictory and inconclusive." We disagree. Plaintiff's testimony that he submitted the Kaiser forms was not mere "speculation or conjecture" (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 807 [85 Cal.Rptr.2d 459]), but direct evidence of plaintiff's own actions. He testified unequivocally that he gave the Kaiser forms "to the manager on duty." He did not remember who the manager on duty was, but he testified that he was "positive" that he did provide the forms to the manager.

Continental asserts that plaintiff's other testimony is equivocal and indicates that plaintiff, in fact, did not remember whether he submitted the Kaiser forms to Chelsea. Read in context and in the light most favorable to plaintiff, however, a reasonable trier of fact could interpret that testimony to relate not to *whether* plaintiff submitted the Kaiser forms to Chelsea, but specifically *to whom* at Chelsea he gave the Kaiser forms. Plaintiff's testimony that he might have the left the forms on the manager's desk rather than handing them personally to the manager also is not an equivocation—plaintiff testified that this was how he "usually" submitted medical excuses. That plaintiff was unable to recall precisely to whom or in what manner he submitted the Kaiser forms does not render his testimony that he did so mere speculation. It is the trier of fact's function at trial to determine whether plaintiff's testimony is credible.

### b. *Request for CFRA Leave*

CFRA does not define what constitutes a "request" for leave. Instead, the Legislature expressly delegated to the Commission the task of "adopt[ing] a regulation specifying the elements of a reasonable request" for CFRA leave. (§ 12945.2, subd. (a); see Cal. Code Regs., tit. 2, § 7297.1, subd. (b)(2) ["A request to take a CFRA leave is reasonable if it complies with any applicable notice requirements, as specified in section 7297.4 . . . ."].) The regulation adopted by the Commission provides in relevant part that, to request CFRA leave, "[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs CFRA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under CFRA or FMLA, or even mention CFRA or FMLA, to meet the notice requirement; however, the employee must state the reason the leave is needed, such as, for example, the expected birth of a child or for medical treatment. The employer should inquire further of the employee if it is necessary to have more information about whether CFRA leave is being sought by the employee and obtain the necessary details of the leave to be taken." (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(1).) The regulation further provides, "Under all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as CFRA or CFRA/FMLA qualifying,

based on information provided by the employee . . . , and to give notice of the designation to the employee." (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(1)(A).)[10]

■ When the need for leave is foreseeable, an employer may require up to 30 days' advance notice. (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(2).) When the need is not foreseeable—as in cases of medical emergency— "notice must be given as soon as practicable." (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(3).) An employer may not deny leave for a medical emergency because the employee did not provide advance notice. (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(4).)

■ A reasonable trier of fact could conclude that plaintiff provided sufficient notice to put Continental on notice that plaintiff needed CFRA-qualifying leave. In a case involving a medical emergency, notice on a hospital's preprinted form that an employee was hospitalized and unable to work may be sufficient to inform an employer that the employee might have suffered a serious medical condition under CFRA, and of the timing and duration of the necessary leave. The absence itself under such circumstances suggests the necessity of a leave—at least as to those absent days. Such information may be "sufficient to make the employer aware that the employee needs CFRA-qualifying leave," and thus may constitute a "request" for leave under CFRA. (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(1); see *Mora v. Chem-Tronics, Inc., supra,* 16 F.Supp.2d at p. 1212 [under FMLA, notice sufficient when employee told employer that son was HIV positive, had a high fever, and that employee could not leave son " 'when he is so ill' "]; *Brannon v. Oshkosh B'Gosh, Inc., supra,* 897 F.Supp. at pp. 1032–1033, 1038–1039 [under FMLA, notice sufficient when employee called to tell employer that employee's daughter was too sick for [employee] to come to work and employee's husband delivered physician's note saying, "Please excuse off work till 1-12-94."].) The regulation expressly provides that plaintiff was not required to invoke CFRA to request leave. If Continental required further information as to whether the information was a request that the absence be treated as a CFRA-qualifying leave, the burden was on

---

[10] FMLA also places on the employer the burden to inquire whether an employee is seeking, and whether to designate leave as, FMLA-qualifying leave. (29 C.F.R. § 825.303(b) (2008); *Xin Liu v. Amway Corp.* (9th Cir. 2003) 347 F.3d 1125, 1134 ["It is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements."]; *Price v. City of Fort Wayne* (7th Cir. 1997) 117 F.3d 1022, 1025–1026 [employee gave sufficient notice by filling out leave request form and "indicat[ing] that the cause was medical need"; "[i]t was then the [employer's] responsibility to inquire further"].) Employers can discharge their obligation to inquire through relatively simple internal procedures. (See, e.g., *Brannon v. Oshkosh B'Gosh, Inc.* (M.D.Tenn. 1995) 897 F.Supp. 1028, 1033 [noting employer's "policy that if an employee is out sick for more than three days, management asks the employee if he or she wants to obtain further documentation so that management can determine whether the FMLA applies"].)

Continental to inquire of plaintiff as to his condition and situation, whether the information constituted a request, and to determine whether plaintiff's leave was CFRA-qualifying leave. (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(1)(B).) Under CFRA and the implementing regulations, an employer should not be able to terminate for absences a worker known to be sick or injured without first determining if that employee qualifies for and wants leave.

Because plaintiff's need for leave was unforeseeable due to an emergency medical condition, and because plaintiff testified that he both called in sick during his absence and submitted the Kaiser forms to Chelsea upon returning to work, a reasonable trier of fact could also conclude that plaintiff requested leave "as soon as practicable." (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(3); see *Sims v. Alameda-Contra Costa Transit District* (N.D.Cal. 1998) 2 F.Supp.2d 1253, 1267 [under FMLA, plaintiff provided adequate notice when he signed employer's "sick book" three times and provided "doctor's slips within two days of his return to work"].)[11]

### 2. *Triable Issue of Causal Connection*

Continental recognizes that the Kaiser forms, if received by Chelsea, "arguably would have provided notice that [plaintiff] had been hospitalized and thus would have been germane to the CFRA claim . . . ." Continental nevertheless argues that there is no evidence that Bellamy and Johnson *personally* were aware of plaintiff's "protected conduct or status," so that plaintiff's discharge could not have been "because of" plaintiff's exercise of his right to CFRA leave, as required by section 12945.2, subdivision (*l*). The reasoning of the authorities, the purpose of CFRA, and public policy militate against Continental's analysis of CFRA.

The "because of" language in section 12945.2, subdivision (*l*) requires only proof of a causal connection between the employee's protected status or conduct and the adverse employment action taken by the employer. (*Dudley v. Department of Transportation, supra*, 90 Cal.App.4th at p. 261 [CFRA retaliation claim]; see also *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 478 [4 Cal.Rptr.2d 522] [FEHA retaliation claim].) The decision maker must have knowledge, but just knowledge of the protected conduct—the absences. Knowledge that the conduct was protected is not required. Continental does not dispute that Chelsea assessed two recordable absences against plaintiff for missed work due to his hospitalization and recovery. Nor does Continental dispute that Bellamy and Johnson knew of those absences and discharged plaintiff in reliance on—that is, "because

---

[11] The California Supreme Court recently disagreed with the decision in *Sims v. Alameda-Contra Costa Transit District, supra*, 2 F.Supp.2d 1253, but on an issue not relevant here. (*Lonicki v. Sutter Health Central, supra*, 43 Cal.4th at pp. 212–213 [lead opn. of Kennard, J.]; *id.* at p. 217 [conc. & dis. opn. of Chin, J.].)

of"—those absences. In considering causation, we recognize that CFRA protects the right to take leave, not, as Continental suggests, the right to request leave. The facts are sufficient to demonstrate a causal link between plaintiff's leave and his discharge.

Continental argues, in effect, that proof of a causal connection requires that Bellamy and Johnson knew not only of plaintiff's *conduct* (that is, his absences), but also that plaintiff's conduct was *legally protected.* Continental, however, cites no authority so holding, and the case law appears to be to the contrary. For example, in *Faust v. California Portland Cement Co., supra,* 150 Cal.App.4th 864, an employee took a 30-day psychiatric leave that expired before the employee felt well enough to return to work. The employee obtained and submitted a medical certification form from his chiropractor stating that the employee needed "physiotherapy, chiropractic therapy and rest," and that the employee was " 'unable to perform regular job duties' " for another month. (*Id.* at p. 870.) The employer's human resources manager determined that the chiropractor's certification was " 'insufficient to sustain an approved absence from work.' " (*Id.* at p. 872.) Because the employee missed two weeks of work without a valid excuse, the human resources manager notified the employee that he was discharged. (*Ibid.*) The human resources manager, it appears, did not know that the employee's absences were "protected" leave under CFRA. To the contrary, it appears that she believed in good faith that the employee's absences were *not* protected because the employee had failed to provide a valid physician's certification. Nevertheless, the Court of Appeal reversed a summary judgment for the employer, holding that the employee had made out a prima facie case of CFRA retaliation "by presenting evidence that he was entitled to leave under the CFRA, he availed himself of that right, and [he] was terminated for taking the leave to which he was entitled." (*Faust,* at p. 885; see *Price v. City of Fort Wayne, supra,* 117 F.3d at p. 1026 [summary judgment for employer reversed despite employer's contention that employee's request for paid leave "foreclosed the inference that she might be interested in FMLA leave"]; *Sharpe v. MCI Telecommunications Corp.* (E.D.N.C. 1998) 19 F.Supp.2d 483, 491 [employer liable for FMLA retaliation although relevant managers "were unaware whether [employee's] leave had even been classified as FMLA leave"]; see also *Trans World Airlines, Inc. v. Thurston* (1985) 469 U.S. 111, 129–130 [83 L.Ed.2d 523, 105 S.Ct. 613] [plaintiffs made out prima facie case of age discrimination although airline "acted reasonably and in good faith" with respect to legality of policy denying overage captains right to transfer to an alternative position].)

The rule advocated by Continental would be inconsistent with the antidiscrimination provisions of CFRA, and would encourage employers to have their managers remain ignorant of both the law and the facts relating to CFRA leave. For example, if an employer has a no-fault attendance policy

mandating termination after a certain number of absences, then an employee can be discharged automatically for absences. Under the rule advocated by Continental, if the employer's human resources manager remains ignorant either that the employee's leave was for a serious health condition, or that leave for a serious health condition is protected by CFRA, then the discharge would not be "because of" the employee's exercise of CFRA rights, and the employer could not be liable for CFRA discrimination. Such a result would be inconsistent with the purposes of the statute. (*Reeves v. Safeway Stores, Inc., supra,* 121 Cal.App.4th at p. 109.)

Moreover, a principle allocating to an employee-plaintiff the burden of proving that a manager subjectively knew that an employee's conduct was legally protected would, in effect, require a plaintiff to negate an employer's good faith as part of the employee's prima facie case.[12] There is no authority to support such a principle. Under CFRA and its implementing regulations, the *employer* bears the burden to determine whether an employee's leave is protected—that is, to "inquire further of the employee if it is necessary to have more information about whether CFRA leave is being sought . . ." (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(1)), and ultimately "to designate leave, paid or unpaid, as CFRA or CFRA/FMLA qualifying . . . ." (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(1)(A).) Once an employee has submitted a request for leave under CFRA, the employer is charged with knowledge that the employee's absences pursuant to the leave request are protected, and may not thereafter take adverse employment action against the employee based upon—that is, "because of"—those protected absences. (§ 12945.2, subd. (*l*)(1); Cal. Code Regs., tit. 2, § 7297.7, subd. (a); *Dudley v. Department of Transportation, supra,* 90 Cal.App.4th at p. 264 ["If any of the leaves [employee] took qualified as CFRA leave, and if [employer] took any adverse employment action against [employee] because she exercised her right to take that leave, then [employee] has established a prima facie case of retaliation in violation of CFRA . . . ."]; see *Brannon v. Oshkosh B'Gosh, Inc., supra,* 897 F.Supp. at p. 1039 ["because the plaintiff gave sufficient notice that her absence was necessitated by an FMLA-qualifying reason, her absence . . . was protected by the FMLA"; accordingly, employer's "assessment of [attendance] points against plaintiff and subsequent termination of plaintiff violated the Act"].) Unlike in the FEHA situation, it is not necessary to show that a

---

[12] It is unclear whether an employer's mistaken good faith belief that its conduct was legal is a defense to a CFRA retaliation claim. (Compare *Bachelder v. America West Airlines, Inc.* (9th Cir. 2001) 259 F.3d 1112, 1130, fn. 19 ["employer's good-faith mistake as to whether its action violates the law is not a defense to liability . . ." under FMLA] with *Medley v. Polk Co.* (10th Cir. 2001) 260 F.3d 1202, 1207–1208 ["an employer who discharges an employee honestly believing that the employee has abandoned her job and is otherwise not using FMLA leave for its . . . 'intended purpose' . . . would not be in violation of FMLA, even if its conclusion is mistaken . . ." (fn. omitted)].) That issue is not before us.

particular management employee subjectively *knew* that an employee's absences were protected under CFRA to establish a causal connection between an employee's CFRA leave and an adverse employment action taken "because of" the absences.

We have concluded that plaintiff submitted sufficient evidence to raise a triable issue of fact whether the Kaiser forms under the circumstances constituted a request for CFRA-qualifying leave. If the trier of fact concludes that plaintiff requested CFRA-qualifying leave, then Continental's admission that those absences were the cause of plaintiff's discharge is sufficient to establish a causal connection between plaintiff's exercise of his right to CFRA leave and his discharge. Summary adjudication on plaintiff's CFRA claim was therefore improper.

### D. Tameny *Claim for Termination in Violation of Public Policy*

Because triable issues precluded summary adjudication of plaintiff's claim for violation of CFRA, it necessarily follows that triable issues precluded summary adjudication of plaintiff's *Tameny* claim for wrongful termination in violation of public policy. (*Faust v. California Portland Cement Co., supra,* 150 Cal.App.4th at p. 886; *Nelson v. United Technologies, supra,* 74 Cal.App.4th at p. 612 ["an employee may state a claim under California law for wrongful termination in violation of the public policy within the CFRA"].)

### E. *Continental's Motion for Sanctions*

Continental requests that this court impose sanctions against plaintiff's appellate counsel on the grounds that plaintiff's appeal was "patently" frivolous. We deny Continental's motion.

" 'Free access to the courts is an important and valuable aspect of an effective system of jurisprudence, and a party possessing a colorable claim must be allowed to assert it without fear of suffering a penalty more severe than that typically imposed on defeated parties.' " (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 648 [183 Cal.Rptr. 508, 646 P.2d 179] (*Flaherty*).) Nevertheless, California courts are authorized to impose sanctions against a party or counsel when he or she has abused the right of free access by prosecuting a frivolous appeal. (Code Civ. Proc., § 907 ["When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."]; see also Cal. Rules of Court, rule 8.276(a)(1).)

Sanctions should be "used most sparingly to deter only the most egregious conduct." (*Flaherty, supra,* 31 Cal.3d at p. 651.) That an appeal lacks merit does not, alone, establish that it is frivolous. (*Dodge, Warren & Peters Ins.*

*Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1422 [130 Cal.Rptr.2d 385].) An appeal is frivolous "only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Flaherty, supra,* 31 Cal.3d at p. 650; accord, *Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 790, fn. 6 [226 Cal.Rptr. 90, 718 P.2d 77].) The good faith of appellant and counsel is tested subjectively. The focus is on the good faith of the appellant and counsel. Whether any reasonable attorney would agree that the appeal is without merit is tested objectively. (*Flaherty, supra,* 31 Cal.3d at pp. 649–650.)

Although we have concluded that plaintiff's appeal on his FEHA claims lacked sufficient merit, it was not frivolous. Plaintiff had a "colorable argument . . . that the judgment resulted from an error of law." (*Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1078 [275 Cal.Rptr. 594].) The requirement of decision maker knowledge of a plaintiff's disability in FEHA discrimination and failure-to-accommodate claims is well established under California law. California law is not as well developed, however, with respect to the circumstances in which a decision maker will be deemed to have such knowledge. Continental cited, and we are aware of, no California case that was factually on point and therefore dispositive of plaintiff's FEHA claims. Moreover, the fact that Continental devoted 11 pages of its brief and cited more than two dozen cases—most of them nonbinding federal decisions under the ADA—to support its argument on this issue is illustrative of the uncertainty in California law. This is not to say that uncertainty in the law is necessary to avoid sanctions for an appeal. (See *Simonian v. Patterson* (1994) 27 Cal.App.4th 773, 786 [32 Cal.Rptr.2d 722], quoting rule 3-200 of the California State Bar Association's Rules of Professional Conduct [A member should not present a claim " 'unless it can be supported by a good faith argument for an extension, modification, or reversal of such existing law' "].)

With respect to plaintiff's CFRA and *Tameny* claims, we have determined that plaintiff's appeal was meritorious. Continental's motion for sanctions is denied.

## DISPOSITION

The summary adjudications of plaintiff's FEHA claims are affirmed. The summary adjudications of plaintiff's CFRA and *Tameny* claims are reversed, and the matter is remanded for further proceedings consistent with this opinion. Each party is to bear his or its own costs on appeal.

Armstrong, Acting P. J., concurred.

**KRIEGLER, J.,** Concurring and Dissenting.—I concur in the majority's holding that summary judgment was properly granted on Henry Avila's California Fair Employment and Housing Act (the FEHA; Gov. Code, § 12900 et seq.) cause of action, but respectfully dissent from reversal of the summary judgment on California's Moore-Brown-Roberti Family Rights Act (the CFRA; Gov. Code, §§ 12945.2, 19702.3) cause of action. The trial court properly granted summary judgment in favor of defendant and respondent Continental Airlines, Inc., on Avila's CFRA cause of action because the undisputed facts show that Avila never requested leave from Chelsea Food Services, a division of Continental Airlines, under the CFRA. In addition, the evidence is undisputed that the decision to terminate Avila's employment was made by managers who had absolutely no knowledge of the hospitalization and who made the decision based upon Avila's habitual absences.

One need only look to Avila's unambiguous deposition testimony in order to conclude the trial court properly granted summary judgment on the basis there was never a request for CFRA leave by Avila. The following testimony was given by Avila in his deposition:

"Q: Okay. Now, at any time, did you ask Chelsea or any manager at Chelsea saying you wanted a leave of absence? You didn't, did you?

"A: No.

"Q: Okay. You would just miss work when you missed work because of the reasons you explained. But you never asked for—

"A: No, no.

"Q: —leave of advance [*sic*] or anything like that?

"A: No.

"Q: And did you—and you never asked afterwards to say, let me treat that as a leave?

"A: No."

As this colloquy makes clear, Avila does not claim to have ever made a request under the CFRA. In fact, it is undisputed that the first time Avila ever mentioned the issue of leave under the CFRA was months after his termination, when Avila filed charges with the Department of Fair Employment and Housing. The trial court correctly ruled there was no request for leave under the CFRA in granting Chelsea's motion for summary judgment.

The absence of a request for leave is fatal to Avila's CFRA cause of action. Under the CFRA, it is "an unlawful employment practice for any employer . . . to refuse to grant *a request by any employee*" who qualifies under

the act "for family care and medical leave." (Gov. Code, § 12945.2, subd. (a), italics added.) The Legislature's choice of words could not have been clearer—the right to CFRA leave is triggered *by an employee's request.*

Not only does the express language of Government Code section 12945.2, subdivision (a) require a request for leave by the employee, the implementing regulation contains a similar requirement. California Code of Regulations, title 2, section 7297.4, subdivision (a)(1) provides that the "[a]n employee *shall provide at least verbal notice* sufficient to make the employer aware that the employee needs CFRA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under CFRA or FMLA, or even mention CFRA or FMLA, to meet the notice requirement; however, *the employee must state the reason the leave is needed,* such as, for example, the expected birth of a child or for medical treatment. The employer should inquire further of the employee if it is necessary to have more information about whether CFRA leave is being sought by the employee and obtain the necessary details of the leave to be taken." (Italics added.)

Moreover, if it is not practical to provide advance notice of the need for leave because the need is unforeseeable, the employee must give notice "as soon as practicable." (Cal. Code Regs., tit. 2, § 7297.4, subd. (a)(3).) The regulation clearly contemplates an employee's request for leave, because "[t]he employer shall respond to *the leave request* as soon as practicable and in any event no later than ten calendar days *after receiving the request.*" (*Id.*, subd. (a)(6), italics added.)

Despite the uncontradicted evidence that Avila never requested leave under the CFRA, the majority holds that Avila's own conflicting deposition testimony[1] regarding how he presented a form from Kaiser Permanente indicating he had been in the hospital in December 2004 somehow required Continental to determine if Avila needed CFRA leave pursuant to California Code of Regulations, title 2, section 7297.4. To the contrary, Continental had no obligation to make any such inquiry because Avila made no request for leave until well after his termination. Whatever obligation an employer has under the regulation was simply never triggered in this case because of the absence of any request for leave.

Avila's conduct did not constitute a request for leave as defined in the California Code of Regulations, title 2, section 7297.4. He never gave verbal or written notice that he was requesting a leave. He did nothing to let his

---

[1] At various times in his deposition, Avila testified to having no recollection of how he made delivery of the Kaiser Permanente form, that he gave the paperwork to an unidentified manager, that he gave it to someone filling in for a manager, or that he merely left it on a desk.

employer know the reason for his need for a leave. When Avila returned to work in December 2004 after his hospitalization, he did not request leave because he was not terminated. In fact, Avila was not terminated until January 2005, when his habitual absences exceeded that permitted by Continental. At that point, Avila chose to follow an internal appeal process, which he had successfully pursued years earlier when he was also terminated for excessive absences. To suggest that Avila made a request for leave under the CFRA, in the face of these undisputed facts, is entirely inconsistent with the requirements of the CFRA and the California Code of Regulations, title 2, section 7297.4.

In addition to summary judgment being properly granted because a request for leave under the CFRA was never made by Avila, there is a second, independent basis to uphold the grant of summary judgment. It is undisputed the persons responsible for the decision to terminate Avila had no knowledge of his hospitalization. Because the managers had no knowledge of the hospitalization and Avila never made a request for a CFRA leave, I cannot see how there is a triable issue of fact as to whether Continental committed an unlawful employment practice.

Daysi Bellamy, the human resources manager of Chelsea, made the decision to terminate Avila and presented an uncontroverted declaration that she had no knowledge of Avila's hospitalization before making the termination decision. Similarly, Judy Tanes, the managing director of Chelsea, approved Avila's discharge, expressly declared that she had no knowledge of Avila's medical condition, and was unaware of any request for leave from him prior to the date of his termination. There is no evidence anyone affiliated with Chelsea ever saw the Kaiser Permanente report of Avila's hospitalization prior to the time Avila's employment was terminated.

There cannot be an unfair employment practice under the CFRA where the employer has no knowledge of the employee's condition. It is manifestly unreasonable to require an employer to defend against a CFRA cause of action at trial on a claim that it improperly denied leave where the undisputed facts demonstrate the employer had no knowledge of any condition justifying such leave and no request for leave is made by the employee.

In a similar context arising under the FEHA, this court has held that an employee cannot make a prima facie case of discrimination sufficient to survive summary judgment where the undisputed facts show the employer had no knowledge of the employee's condition. (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133 [29 Cal.Rptr.3d 144] [employee's claim that she was terminated due to her pregnancy did not survive

summary judgment where the undisputed facts demonstrated the employer had no knowledge of the pregnancy].) Here, the absence of any proof that Continental's decision makers had notice of Avila's hospitalization, combined with Avila's admission that he never requested CFRA leave, defeats Avila's CFRA cause of action.

I would affirm the trial court's order granting summary judgment in its entirety.

A petition for a rehearing was denied August 28, 2008, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied November 12, 2008, S166950. Baxter, J., was of the opinion that the petition should be granted.