Filed 5/23/25  Rubio v. AmeriPride Services CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANA RUBIO,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>AMERIPRIDE SERVICES, INC.,<br><br>    Defendant and Respondent. | B337000<br><br>(Los Angeles County Super. Ct. No. 20STCV13057) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge. Affirmed.

Pairavi Law, Edwin Pairavi and Joshua M. Mohrsaz for Plaintiff and Appellant.

Morgan, Lewis & Bockius, Jason S. Mills and Eva M. Nofri for Defendant and Respondent.

## INTRODUCTION

Ana Rubio worked for AmeriPride Services, LLC[1] (AmeriPride) for three-and-a-half months. She missed work or left early on nine days due to either her granddaughter's, her husband's, or her own medical issues.

AmeriPride terminated Rubio's employment based on her attendance record. She then sued AmeriPride for disability-related claims under the Fair Employment and Housing Act (FEHA) (Government Code § 12900 et seq.)[2], and for wrongful termination. The trial court granted AmeriPride's motion for summary judgment on the ground that neither Rubio nor her husband suffered from a qualifying disability under FEHA.[3]

We conclude that summary judgment was properly granted, but for a different reason. Even assuming Rubio and her husband suffered from qualifying disabilities, she failed to raise a triable issue as to whether AmeriPride knew of her disability or her husband's disability when it decided to terminate her employment. The adverse employment action, therefore, could not have been "because of" Rubio's (or her husband's) disability—an essential element of her claims. Accordingly, we affirm.

---

[1] AmeriPride Services, LLC was incorrectly sued as AmeriPride Services, Inc.

[2] All undesignated statutory references are to the Government Code.

[3] Rubio did not claim that her granddaughter suffered from a disability.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

AmeriPride is a uniform rental and linen supply company. StaffWorks, Inc. dba TalentOne (TalentOne) contracts with AmeriPride to provide the services of temporary workers employed by TalentOne.

On December 27, 2017, Rubio applied for employment with TalentOne. TalentOne then assigned Rubio to AmeriPride to work as a Production Employee. Rubio's work schedule was Monday through Friday from 4:00 a.m. to 12:30 p.m. Her job duties included sorting garments and products to be washed, placing garments in the wash-and-dry aisle, offloading the dryers, and operating and tending to the washing and/or drying machines. She reported to Jose Sanchez and Arturo Becerra throughout her employment.

Rubio was absent on seven occasions and left work early on two occasions during her three-and-a-half month tenure with AmeriPride. Specifically, on January 3, 2018, Becerra permitted Rubio to leave work early to tend to her ill granddaughter. A few weeks later, on January 22, Rubio called Becerra to tell him she would not be at work because her granddaughter was sick. Then, on February 5, Rubio called Becerra to tell him she would not be at work because she took her granddaughter to the doctor's office.

---

4      On summary judgment, "we view the evidence in light most favorable to plaintiffs . . ." and "liberally construe plaintiffs' evidentiary submissions and strictly scrutinize defendants' own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) We state the facts consistent with these standards.

On February 21, Rubio took her husband to the doctor because he was not feeling well.  A few hours into her scheduled shift, Rubio texted Becerra to let him know she would not be at work because she had to take her husband to the doctor.

On Thursday, March 15, Rubio's husband was not feeling well again.  According to a declaration Rubio later filed in the litigation, this was due to his heart condition.  According to Rubio, she called Becerra to tell him she could not come to work because she "needed to tend to [her] husband[.]"  The following day, again according to Rubio's declaration, Rubio's husband's heart condition worsened so he went to the hospital.  Rubio left work early so she could be with him.  After arriving at the hospital, Rubio called Sanchez to tell him she left her shift early to be with her husband in the hospital.  During the call, Rubio asked for the rest of the day off work and two additional days off work (the following Monday and Tuesday) "to tend to [her] husband" and be with him in the hospital.  Sanchez approved her request.  It is undisputed that Rubio did not tell Sanchez, and Sanchez was not otherwise aware, what condition her husband was suffering from.

On April 3, Rubio tripped and fell while pushing a laundry cart at work.  Later that day, while on her way out from work, she stopped by Sanchez's office to report the incident.  Rubio testified at her deposition that she told Sanchez "[w]hat had happened, [her] arm was very swollen and God forbid if [she] didn't show up the following day so that he would know what had happened; that [she] had had a very hard blow."  Rubio reported to work the following day, and worked her entire shift even though she was experiencing pain.  She therefore asked Becerra to take the following day off of work (April 5), which Becerra

4

approved. She did not relay to Becerra that she was not feeling well because, according to Rubio, "everybody knew that [she] was hurt. There was no reason for [her] to tell [him]."

Rubio returned to work on Friday, April 6. That same day, Sanchez emailed Mary Apodaca, a Customer Administration Manager at AmeriPride, with the subject line "[S]econd guessing hiring of Ana Rubio[.]"[5] The email stated, in its entirety, the following: "I know this may be a bit late in the game but I rather now than later [*sic*] . . . [¶] I'm really having second thoughts on hiring Ana Rubio. She keeps having attendance issues, I was giving her the benefit of the doubt as I understand we all go through circumstances outside our immediate control. She was encountering a situation with her husband needing some serious medical attention and I was trying to empathize with her but it seems she is going to become one that always has a 'justification' for missing and I don't want to proceed with hiring her at this point. [¶] Let's further discuss before the actual hiring takes place if it hasn't happened yet please[.]"

Rubio then reported to work on Monday, April 9 and Tuesday, April 10. During her shift on April 10, she again asked Becerra to take April 11 off of work because, according to Rubio, she was experiencing pain from her injury. Becerra approved the request.

Rubio worked her full 8-hour shifts on April 12 and 13. On April 13, however, Sanchez informed Rubio that her employment

---

5    AmeriPride's contract with TalentOne provided that AmeriPride had the option to "convert a skilled TalentOne Associate currently on assignment with [AmeriPride]", i.e., directly hire an employee provided by TalentOne in exchange for a fee.

was being terminated (and/or that she would not be hired directly by AmeriPride). Rubio testified that Sanchez told her "'I'm going to let you go. I'm sorry, I am not interested in people who miss time over family matters.'"

Two years later, in April 2020, Rubio filed this lawsuit against AmeriPride.[6] The complaint asserts six causes of action: (1) disability discrimination; (2) associational disability/medical condition discrimination; (3) failure to provide reasonable accommodation; (4) failure to engage in a good faith interactive process; (5) retaliation in violation of FEHA; and (6) wrongful termination.

AmeriPride moved for summary judgment or, alternatively, summary adjudication. After a hearing, the trial court took the matter under submission. It then requested supplemental briefing addressing whether triable issues of material fact exist regarding whether Rubio and/or her husband suffered from a "disability" as defined by FEHA.

After receiving supplemental briefing[7], the trial court granted AmeriPride's motion for summary judgment, concluding

---

6    Rubio also sued two staffing companies, but they are not parties to this appeal.

7    Rubio also submitted a supplemental declaration in support of her supplemental brief. The trial court sustained AmeriPride's objection to the declaration on the ground that the court did "not invite new evidence[.]" The trial court further stated that even if it were to consider the supplemental declaration, the result would not change. On appeal, Rubio asserts that the trial court abused its discretion by disregarding the supplemental declaration (which primarily goes into further detail about her husband's heart condition). However, even if the

there was neither evidence that Rubio suffered from a disability, as defined by FEHA, nor evidence that AmeriPride regarded Rubio as disabled.  The court further concluded "the evidence in support of [Rubio's] husband's disability demonstrates only an acute, non-specific injury that cannot support an associational discrimination claim."  The trial court entered judgment for AmeriPride.  Rubio timely appealed.

## DISCUSSION

### I.    Standard of Review and Legal Standards

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained."  (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334.)  A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action."  (Code Civ. Proc. § 437c, subd. (p)(2).)  If the moving party makes a prima facie showing, the burden shifts to the party opposing summary judgment "to make [his or her own] prima facie showing of the existence of a triable issue of material fact."  (*Aguilar v. Atlantic*

---

trial court erred, Rubio's argument fails because she neither argued nor demonstrated prejudice from any purported error. (See *Truong v. Glasser* (2009) 181 Cal.App.4th 102, 119 [a party challenging a trial court's evidentiary rulings on summary judgment has two burdens on appeal—to show affirmatively the rulings were error and to establish prejudice].)  We also note Rubio's supplemental declaration provides no additional facts regarding whether AmeriPride knew of her or her husband's asserted disabilities—the dispositive issue in this appeal.

7

*Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Ibid.*, fn. omitted.)

"[W]e must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his or] her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor."  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)  We accept as true both the facts shown by the losing party's evidence and reasonable inferences from that evidence.  (*Aguilar, supra,* 25 Cal.4th at p. 856.) "While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny.  [Citation.] . . .  [P]laintiff's subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations."  (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.)

"We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 637.)

## II.  Rubio's Claims for Disability Discrimiation Based on Her Own Disability and Associational Disability Discrimination Based on Her Husband's Disability Fail as a Matter of Law

FEHA provides, in relevant part, that "[i]t is an unlawful employment practice . . . : [¶] (a) For an employer, because of the . . .  physical disability [or] medical condition . . .  of any

8

person, to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . ." (§ 12940, subd. (a); see *Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 925-926.) "A prima facie case of disability discrimination under FEHA requires a showing that (1) the plaintiff suffered from a disability, (2) the plaintiff was otherwise qualified to do his or her job, with or without reasonable accommodation, and (3) the plaintiff was subjected to adverse employment action because of the disability." (*Castro-Ramirez v. Dependable Highway Express, Inc.* (2016) 2 Cal.App.5th 1028, 1037.) While the standard case of disability discrimination under FEHA involves a plaintiff's own disability, this basic framework has also been adopted to cases in which "the 'disability' from which the plaintiff suffers is his or her association with a disabled person," sometimes known as "associational disability discrimination." (*Id.* at pp. 1036-1037.)

Whether the discrimination is direct or associational, the employer's knowledge of the disability is an essential element of a claim for disability discrimination under FEHA—since without at least some knowledge of a disability, an employer cannot make a decision adverse to an employee "because" of a disability. "An adverse employment decision cannot be made 'because of' a disability, when the disability is not known to the employer." (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 236 (*Brundage*).) "While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts. 'Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the [FEHA].'" (*Id.* at p. 237.)

9

Here, even assuming there are triable issues as to whether Rubio or her husband suffered from a qualifying disability within the meaning of FEHA, there is no evidence in the record that the decisionmaker, Sanchez, or Rubio's other supervisor, Becerra, knew of Rubio's asserted disability or her husband's disability, or perceived either to be disabled, when Sanchez made the decision to terminate Rubio's employment.

As to her own disability, as discussed above, Rubio testified that she reported her workplace injury at the end of her shift on the day it occurred (April 3) to Sanchez. According to Rubio, she told Sanchez "[w]hat had happened" and that "[her] arm was very swollen[.]" Rubio worked her entire shift the following day, but was absent (after receiving permission from Becerra) on April 5 and 11 because (she asserts in her declaration) of the pain she was experiencing from her workplace injury. It is undisputed, however, that Rubio did not tell Becerra she was in pain because, according to Rubio, "everybody knew [she] was hurt" so there was "no reason for [her] to tell [him]." It is also undisputed that at no point after Rubio reported her injury to Sanchez did she tell him she was still in pain.

Viewing this evidence in the light most favorable to Rubio, at the time Sanchez terminated Rubio he knew only that she had fallen at work, her arm was swollen that day, and she was absent on two non-consecutive workdays after the injury. Thus, even viewing all inferences in Rubio's favor, the circumstances suggest that Sanchez reasonably knew only that Rubio had suffered a relatively minor injury at work, not that Rubio had a qualifying disability. (§ 12926, subd. (m)(1) [a qualifying physical disability under FEHA includes "[h]aving any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss

10

that" both affects one or more of the body's major systems and "[l]imits a major life activity"].) Certainly, Sanchez's knowledge of Rubio's purported disability is not the "only reasonable interpretation of the known facts." (*Brundage, supra,* 57 Cal.App.4th at p. 237.) An equally, if not more, reasonable interpretation of the circumstances from Sanchez's perspective is that Rubio suffered a sprain or experienced muscle aches, which is precisely the type of condition excluded from the definition of "physical disability" under FEHA. (See Cal. Code Regs. Tit. 2, § 11065, subd. (d)(9)(B) ["'[d]isability'" does not include conditions that have "little or no residual effects, such as . . . sprains, muscle aches, soreness, bruises"].)

Thus, AmeriPride met its initial burden of showing that an element of Rubio's prima facie case—knowledge of the asserted disability—is lacking. The burden therefore shifted to Rubio to demonstrate a triable issue of material fact on this issue. Rubio relies on evidence that: (1) she knows everyone knew she was hurt because "[g]ossip runs wild" at the company so "[e]verybody knows everything"; (2) Scott Feeney, a floor manager, provided her with ibuprofen on two occasions after she fell at work; and (3) in November 2018, seven months after her injury, a doctor diagnosed her with "sprain of ligaments of cervical spine"; "sprain of ligaments of lumbar spine"; and "injury of unspecified muscle, fascia and tendon at shoulder and upper arm level" and placed her on "modified duty" including "[n]o lifting over 25 pounds." This evidence fails to raise a triable issue of material fact. First, Rubio's testimony that everyone knew she was hurt is not only speculative, but misses the point. Not every injury qualifies as a disability under FEHA. (See, e.g., *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 348 ["Pain alone does not always constitute

11

or establish a disability"].)  Second, evidence that another employee (not the decisionmaker) provided Rubio with medication at work, and that she received a medical diagnosis several months after her termination, is irrelevant to determining whether the decisionmaker acted with discriminatory animus.  (See *Brundage, supra*, 57 Cal.App.4th at pp. 236-237 [decisionmaker must be aware of the disability "when the adverse employment decision was made"]; see also *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1247 (*Avila*) [affirming grant of summary adjudication of employee's disability discrimination claim because neither medical forms confirming the employee was hospitalized, nor the employee's statements to coworkers that he had pancreatitis demonstrated that the decisionmakers knew of the employee's asserted disability].)

Rubio attempts to analogize her case to the facts in *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570 (*Soria*).  The *Soria* court reversed a summary judgment in favor of the employer based on its conclusion that triable issues of fact existed as to whether the employer regarded the employee as having a disability when it terminated her employment.  (*Id.* at p. 590.)  But that case only highlights what is missing from the record here.  In *Soria*, the employee told her supervisor she had been diagnosed with a potentially cancerous tumor and the doctors wanted to remove it, which would require removal of part of her stomach and esophagus.  (*Id.* at p. 593.)  Based on this specific information, the *Soria* court held "[t]he only reasonable interpretation of this information, if the jury finds [the employee's] testimony credible, is that [the employee] had a

12

serious condition that would interfere with her ability to work." (*Ibid*.)

In contrast to the facts in *Soria*, Rubio testified she had only relayed to Sanchez that she fell at work and her arm was swollen. She then missed two non-consecutive days of work because, according to Rubio, she was in pain. But it is undisputed that she did not tell Sanchez she was in pain after the day she reported the injury, and no other specifics regarding her condition were provided to Sanchez or any other employee of AmeriPride. *Soria* is, therefore, unhelpful to Rubio.

We acknowledge the courts """"must construe the FEHA broadly, not . . . restrictively."""" (*Vernon v. State of California* (2004) 116 Cal.App.4th 114, 123; § 12993, subd. (a).) Consistent with this legislative directive, although it is the employee's burden to notify her employer of her disability, she need not use the term "disability" or other specific terms to invoke the protections of FEHA. (See *Soria, supra*, 5 Cal.App.5th at p. 593.) However, here, Rubio did not take even the most minimal steps to inform AmeriPride of her asserted disability or potential disability, such as the level of pain she was experiencing, the location of pain, or how the pain affected her in her daily life. On this record, we discern no basis upon which a reasonable trier of fact could conclude that Sanchez knew Rubio was disabled within the meaning of FEHA or regarded her as being disabled when he terminated her employment.

As to Rubio's claim for associational disability discrimination, again, there is no evidence that Sanchez knew Rubio's husband was suffering from a disability or perceived him to be disabled. AmeriPride presented the following undisputed evidence: (1) Rubio did not need or want further time off to care

13

for her husband other than the three days in March; (2) Sanchez was not aware of what condition Rubio's husband was suffering from; and (3) Sanchez did not have direct conversations with Rubio about her husband's illness and did not know whether or not it was an ongoing condition.

In opposing summary judgment, Rubio declared she is the primary caregiver for her husband who suffers from a heart condition. She further declared that she left work early, and requested two additional days off, which Sanchez approved, so she could "tend to [her] husband[.]" in the hospital. Critically, however, she did not declare that she relayed to Sanchez the reason for her husband's hospitalization. Simply informing AmeriPride that her husband was hospitalized for a few days for an unspecified condition was not sufficient to put AmeriPride on notice that her husband was suffering from a qualifying disability. (See *Avila, supra,* 165 Cal.App.4th at p. 1249 [hospital forms stating the plaintiff was unable to work on four workdays due to an unspecified condition, and that plaintiff was hospitalized for three days is not sufficient to inform the employer that she suffered from a qualifying disability].)

Moreover, neither the statements in Sanchez's April 6 email, nor his alleged statements during the termination meeting create a triable issue of fact regarding whether Sanchez knew or perceived Rubio's husband as suffering from a disability. In the April 6 email, Sanchez acknowledged Rubio was encountering "a situation with her husband needing some serious medical attention" and he was "trying to empathize with her[.]" He ultimately felt, however, that "she is going to become one that always has a 'justification' for missing [work]." And during the termination meeting, Rubio testified that

14

Sanchez said he is "not interested in people who miss time over family matters." As noted above, Rubio missed work not only to care for her husband, but also several days to care for her granddaughter (whom Rubio does not claim has a disability). It would be mere speculation to infer from these statements that Sanchez perceived Rubio's husband as having a condition that was ongoing and disabling. As discussed above, Sanchez knew only that Rubio's husband was hospitalized for a few days for an unspecified condition—Rubio did not even relay to Sanchez that the condition was heart-related. On these facts, Sanchez had no reason to believe Rubio's husband's condition was disabling.

Accordingly, we conclude Rubio cannot demonstrate an essential element of a prima face case of disability discrimination and associational disability discrimination, i.e., that she suffered an adverse employment action because of her disability or her association with a disabled person.

## III. Rubio's Remaining Claims

Rubio's remaining claims—for failure to provide reasonable accommodation, failure to engage in good faith interactive process, retaliation in violation of FEHA, and wrongful termination—all also depend on a finding that the AmeriPride employee who decided to discharge her knew of Rubio and/or her husband's asserted disabilities or perceived Rubio and/or her husband as having a disability. (See, e.g., *Avila, supra*, 165 Cal.App.4th at p. 1252 ["Section 12940, subdivision (m) requires an employer to accommodate only a '*known* physical . . . disability'"]; § 12940, subd. (n) [employer engages in unlawful employment practice if it "fail[s] to engage in a timely, good faith, interactive process with the employee or applicant to determine

15

effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical . . . disability"]; *Hodges v. Cedars-Sinai Medical Center* (2023) 91 Cal.App.5th 894, 914 ["Section 12940, subdivision (m), prohibits retaliation by an employer for requesting an accommodation under that subdivision—i.e., for a 'known physical or mental disability'"]; *Arteaga v. Brink's, Inc.*, *supra*, 163 Cal.App.4th at p. 355 ["The elements of [plaintiff's] common law disability [wrongful] termination claim are the same as those of his FEHA claim. . . . As a result, the wrongful termination claim fails for the same reasons as the FEHA claim"].)  For the reasons discussed above, AmeriPride met its initial summary judgment burden of establishing Rubio cannot establish this element of her case, and Rubio has not raised a triable issue of fact.  We therefore affirm the trial court's summary adjudication of these additional claims.

Finally, because the trial court properly granted summary judgment on all of Rubio's substantive claims, preventing Rubio from recovering compensatory damages, the trial court also correctly summarily adjudicated Rubio's punitive damages claim in favor of AmeriPride.  (See *Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 530 ["There must be a recovery of actual damages to support an award of punitive damages"]; see also *Brewer v. Second Baptist Church* (1948) 32 Cal.2d 791, 801-802 [a defendant must have committed a tortious act before punitive damages can be assessed].)

16

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 947-951.)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

DAUM, J.*

We concur:

ZUKIN, Acting P.J.

MORI, J.

---

\*      Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.

17