Filed 1/28/26  Shabazz v. West Hills Hospital etc. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SCOTT SHABAZZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>WEST HILLS HOSPITAL AND MEDICAL CENTER et al.,<br><br>Defendants and Respondents. | B332570<br><br>(Los Angeles County Super. Ct. No. 20STCV45585) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Ivie McNeill Wyatt Purcell & Diggs, Byron Michael Purcell, Julio C. Navarro for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Jason W. Kearnaghan, Khesraw Karmand, Melanie M. Hamilton for Defendants and Respondents.

_____

Plaintiff Scott Shabazz appeals from a judgment entered against him after the trial court granted the summary judgment motion of defendants West Hills Hospital and Medical Center (the hospital) and three hospital employees in this action asserting employment-related causes of action. Shabazz alleges in his complaint, among other things, that defendants discriminated against him based on his race when the hospital placed him on an investigatory suspension after a vial of morphine went missing from the emergency department while he was working there as a medical technician. Defendants stated that the reason for the suspension was their understanding that Shabazz was the only person within arm's reach of the vial at the time it disappeared other than a nurse who reported it missing. After a 23-day suspension and an investigation that was deemed inconclusive, Shabazz returned to work at the hospital, where he remained employed for three more years until he voluntarily resigned.

Approximately eight weeks after defendants filed their summary judgment motion, and about a week before the opposition was due, Shabazz sought a continuance of the hearing on the motion. The trial court granted the continuance, over defendants' objection, giving Shabazz an additional seven and a half months to respond to the motion. Shabazz filed most of his opposition papers nearly 24 hours after they were due, including all his written evidence and his response to defendants' separate statement of undisputed material facts. A couple of days later, he filed an ex parte application seeking either another continuance of the hearing on the motion or an order allowing him to serve the untimely opposition papers. The trial court denied the

application in its entirety, and Shabazz does not challenge that ruling on appeal.

Shabazz asks us to reverse the judgment, contending primarily that a surveillance video he lodged in this court establishes a triable issue of material fact precluding summary judgment. He asserts the video shows there were other people in the emergency department who could have taken the vial of morphine after a nurse set it down, but defendants targeted and suspended him because of his race. Even if we were to ignore the procedural defects in the opposition papers, including but not limited to the untimely response to defendants' separate statement of undisputed material facts, we would have no grounds to reverse the summary judgment. The record is devoid of any evidence to assist us in interpreting the distorted and intermittent images in the video. For example, based on the evidence before us, we can only speculate as to (1) which of the multiple women in the video is the nurse who allegedly was the last person to handle the vial before it disappeared, (2) which mobile workstation is at issue, (3) at what point in the 43-minute video the vial went missing, and (4) where Shabazz and other employees were located in relation to the nurse's mobile workstation at the moment the vial went missing and until the nurse reacted to it being missing. Without any evidence providing such context, the video does not raise a triable issue of material fact that the reason for Shabazz's suspension was a pretext for discrimination, as he contends.

Shabazz has not demonstrated the trial court erred in granting summary judgment. Accordingly, we affirm.

3

## BACKGROUND

### A.    Factual Background

In 2014, the hospital hired Shabazz as an emergency department medical technician.  During his orientation, he acknowledged receipt of the hospital's written policies, including its drug and alcohol policies.  The incident giving rise to this action occurred four years later, on December 12, 2018.

On that day, Shabazz was working in the emergency department as were Nurse Evgeniya Krol and others.  At some point during her shift, Krol notified the Charge Nurse that a vial of morphine "had gone missing from a Workstation on Wheels ('WOW')" in the emergency department.  Janeanne Morgan, the Director of Emergency Services at the hospital, and Elizabeth Reid, the Assistant Chief Nursing Officer at the hospital, "immediately commenced an initial investigation."  They stated in declarations supporting the motion for summary judgment that based on their initial investigation, they "understood" that other than Krol, Shabazz was "the only person near the WOW and within arm's reach of the morphine when it disappeared."  They also stated it "did not seem plausible" to them that Krol "would report suspected diversion of the missing morphine if she had taken it herself."

Hospital policy permits the hospital to search an employee's pockets, locker, and personal property if a supervisor has a reasonable suspicion that the employee has violated the hospital's Substance Use in the Workplace policy.  During the initial investigation on December 12, 2018, hospital staff conducted a search of Shabazz's pockets and locker and did not recover any morphine.  The same day, the hospital placed Shabazz on an investigatory suspension "pending investigation of

4

the suspected diversion of narcotics." Krol was not scheduled to work at the hospital immediately after December 12, 2018, and she was not placed on suspension.

During the investigation, Morgan, Reid, and Adam Gardner, the hospital's Labor Relations Director, reviewed "surveillance video." In a declaration in support of the summary judgment motion, Gardner stated that when he reviewed the surveillance video, he observed that Krol's "body language suggested concern and disbelief as to where the morphine went." The investigation also involved "disassembling the WOW where the morphine was last located." Hospital staff interviewed Shabazz while he was on investigatory suspension. On December 31, 2018, after Krol submitted a notice of resignation from her position at the hospital, Gardner interviewed her regarding the incident. The hospital never located the missing vial of morphine, and it deemed the surveillance video "inconclusive" as to what ultimately happened to the vial.

According to the hospital's payroll records, Shabazz returned to work on January 4, 2019, 23 days after his suspension began.[1] He was not terminated or demoted, and his pay was not docked. Nor was he otherwise disciplined.

The applicable Collective Bargaining Agreement (CBA) provides, in pertinent part, "No employee will be held in *unpaid* investigatory suspension for more than ten (10) calendar days." (Italics added.) The CBA also states, "In the event an investigatory suspension results in no disciplinary action or

---

[1] In his appellate briefing, Shabazz states that he was suspended for 27 days. However, the hospital's payroll records show that he clocked in and out of work on January 4, 2019, 23 days after he was placed on suspension on December 12, 2018.

action that does not include a disciplinary suspension, the employee shall be paid for shifts scheduled and missed during the investigatory suspension." The hospital's payroll records show that on December 21, 2018, nine days after Shabazz was placed on suspension, he received a payroll deposit into his bank account for the pay period from December 2-15, 2018. On January 7, 2019, he received a payroll deposit into his bank account for the pay period from December 16-29, 2018. On January 18, 2019, he received another direct deposit for the pay period from December 30, 2018 to January 12, 2019.[2]

## B.    Procedural Background
### 1.    *The complaint*
On November 30, 2020, while Shabazz was still employed by the hospital, he filed this action against the hospital, Reid, Morgan, and Gardner (collectively, defendants). He asserted 18 causes of action in his complaint, but he challenges the summary judgment only as to the following 12 causes of action: (1) the first cause of action for wrongful suspension in violation of public policy, (2) the third cause of action for race/ethnicity discrimination in violation of the California Fair Employment and Housing Act, Government Code section 12900 et seq. (FEHA), (3) the fourth cause of action for race/ethnicity harassment in violation of FEHA, (4) the fifth cause of action for

---

[2] Shabazz asserts he "was suspended *without pay* for twenty-seven days (27) in violation of the [CBA]." (Italics added.) He does not explain how that assertion is consistent with the hospital's payroll records, which show he received a payroll deposit during his suspension, and he was paid for the pay periods that coincided with his suspension.

6

sex/gender discrimination in violation of FEHA, (5) the sixth cause of action for sex/gender harassment in violation of FEHA, (6) the seventh cause of action for retaliation in violation of FEHA, (7) the eighth cause of action for failure to prevent discrimination, harassment and retaliation, (8) the thirteenth cause of action for invasion of privacy, (9) the fifteenth cause of action for "false light," (10) the sixteenth cause of action for intentional infliction of emotional distress, (11) the seventeenth cause of action for negligence, and (12) the eighteenth cause of action for negligent infliction of emotional distress. Shabazz asserted the first, third, fifth, seventh, and eighth causes of action against the hospital only, and the remainder against all defendants.

In the complaint, Shabazz alleged, in pertinent part, that he "was suspended and falsely accused of taking the morphine from the emergency room simply based on the fact that he was male and/or Black – African American." He further alleged, "Despite[] the fact that [he] was not the only person around in the area at the time the morphine was allegedly stolen, he was treated like the culprit and a criminal because of his race, sex or gender and was forcefully searched against his will, escorted off the premises by security, told not to return and suspended in a humiliating and inhumane fashion." Finally, he alleged, "The resident nurse who lost the morphine was never suspended or disciplined and continued to work her regular schedule. As a result[] of the wrongful accusations [Shabazz] has been the source of ridicule and contempt by the company and co-workers which he continues to endure." He maintained defendants were in possession of a surveillance video that showed he did not take

7

the vial of morphine. He sought compensatory and punitive damages, among other monetary relief.

At some point in 2022, more than a year after he filed this action, Shabazz voluntarily resigned from his position at the hospital.

**2.** ***Defendants' motion for summary judgment***

On August 25, 2022, more than a year and a half after Shabazz filed this action, defendants moved for summary judgment. As to the discrimination claims, defendants argued Shabazz could not establish a prima facie case because there was no adverse employment action, and even if there were, there was no causal connection between any action and Shabazz's race, ethnicity, sex, or gender. They also argued the hospital "articulated a legitimate, non-discriminatory reason for conducting a limited search of [Shabazz]'s belongings and placing him on a temporary paid investigatory suspension, consistent with Hospital policy and the applicable CBA. Namely, [Shabazz] was the only person in proximity to the vial of morphine that went missing, other than the Nurse who reported the suspected diversion of narcotics."

As to the harassment claims, defendants argued they failed as a matter of law because (1) Shabazz's "temporary placement on a paid investigatory suspension was not offensive or abusive as a matter of law, let alone sufficiently severe or pervasive as to create an objectively and subjectively abusive working environment"; (2) Shabazz did not allege defendants made any harassing comments in connection with his suspension; (3) under California law, harassment liability may not be based on a personnel management decision; and (4) Shabazz could not

8

establish the hospital suspended him because of a protected characteristic.

As to the retaliation claim, defendants argued Shabazz could not establish a prima facie case as a matter of law because (1) he did not allege he engaged in any "protected activity" for purposes of a retaliation claim; (2) he "was not subjected to an adverse employment action that materially affected the terms, conditions, or privileges of his employment"; and (3) and even if he could establish the first two elements, he could not show a causal link between any protected activity and the hospital's action.

Defendants argued Shabazz's claims for wrongful suspension and failure to prevent discrimination, harassment, and retaliation failed as a matter of law for the same reasons his FEHA claims failed, as set forth above. They also pointed to their written policies in arguing they took all reasonable steps necessary to prevent discrimination and other mistreatment.

As to Shabazz's claim for invasion of privacy, defendants argued (1) he had no reasonable expectation of privacy, as he "expressly consented to the search of his pockets and locker in connection with the missing morphine" under the hospital's Substance Use in the Workplace policy; and (2) the hospital "was further justified in investigating [him] based on reasonable suspicion that he diverted the morphine as he was understood to be the only person in arm's reach of the morphine at the time of its disappearance." As to the "false light" claim, defendants argued Shabazz could not "point to any publicity placing him in any false light."

Defendants argued Shabazz's intentional infliction of emotional distress (IIED) claim failed because (1) he could not

"credibly claim that the conduct alleged, namely, the paid investigatory suspension, reached the level of extreme, outrageous, or intolerable conduct necessary to support an IIED claim under the law," noting he continued working for the hospital for three more years; and (2) the claim was preempted by the Workers' Compensation Act (WCA) because the alleged emotional distress arose out of his employment. They also argued the negligence and negligent infliction of emotional distress claims failed because defendants did not owe Shabazz a duty to refrain from negligence and the claims were preempted by the WCA.

In addition to the above-described memorandum of points and authorities, defendants' motion for summary judgment was supported by the requisite separate statement of undisputed material facts and an accompanying appendix of evidence, which includes the evidence summarized above in the factual background section of this opinion.

### 3. *Shabazz's successful request to continue the hearing on the motion*

On October 17, 2022, more than a month and a half after defendants filed their motion for summary judgment, and eight days before the opposition was due, Shabazz filed an ex parte application seeking an order continuing the November 8, 2022 hearing on the motion for at least 90 days. He stated that he needed additional time to depose three witnesses and oppose the summary judgment motion. Over defendants' opposition, the trial court granted the request for ex parte relief, continuing the hearing for seven and a half months to June 27, 2023. Under the version of Code of Civil Procedure section 437c, subdivision (b)(2) in effect in 2022, Shabazz's opposition was due on June 13, 2023,

10

14 days before the hearing. Thus, Shabazz had a total of nine and a half months from the time defendants filed their motion for summary judgment to file his opposition.

### 4. *Shabazz files his opposition papers, most of which are untimely, and the court denies his request for relief*

At 11:46 p.m. on June 13, 2023, the day the opposition was due, Shabazz filed a separate statement of undisputed material facts in opposition to defendants' motion for summary judgment (which did not include a response to the facts set forth in defendants' separate statement of undisputed material facts). At 11:48 p.m., he filed a notice of lodging Exhibit 1 in support of his opposition, which he described in full as "flash drive with video of incident." These are the only two documents Shabazz filed by the June 13, 2023 deadline.

At 12:00 a.m. on June 14, 2023, Shabazz filed an opposition to defendant's summary judgment motion with an attached memorandum of points and authorities. More than 10 hours later, at 10:25 p.m. on June 14, Shabazz filed a declaration from his counsel attaching written exhibits. Within the next few minutes, he filed the remainder of his papers: an amended separate statement of undisputed material facts, an amended opposition with an attached memorandum of points and authorities, and his response to defendants' separate statement of undisputed material facts.

On June 16, 2023, Shabazz filed an ex parte application seeking either another continuance of the hearing on the summary judgment motion or an order "to allow service of Plaintiff's late opposition to the motion." Defendants opposed the ex parte application, and the trial court denied it in its entirety.

11

We do not summarize here the papers Shabazz submitted in the trial court after the deadline to file his opposition. He expressly states in his appellate briefing that he "does not appeal the trial court's denial of the ex parte application."[3] He explains that in his effort to overturn the summary judgment, he is relying on (1) the video referenced in his timely filed notice of lodging, (2) the CBA and payroll records defendants submitted with the motion for summary judgment (described above in the factual background section of this opinion), and (3) a purported December 23, 2018 email from Gardner to other hospital employees, stating Nurse Krol needed to be interviewed about the incident as soon as possible.[4] Although Shabazz submitted the email with his late-filed opposition papers, he argues that we should consider it because he referenced it at the hearing on the motion for summary judgment.

---

[3] After making this statement Shabazz added one paragraph, later in his appellate reply brief, arguing that the trial court "should have considered the late filing." " 'When an appellant fails to raise an issue in the opening brief, raising it for the first time in a reply brief or at oral argument, we generally decline to address the issue or address it in a summary manner.' [Citation.] 'Obvious reasons of fairness militate against consideration of an issue raised' so late." (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 500.) We decline to consider this argument, not only because it was raised for the first time in the reply brief, but also because Shabazz expressly stated earlier in the same brief that he is not challenging the trial court order to which to the argument relates.

[4] Shabazz's counsel attached the email to his declaration without explaining the authenticity of or foundation for the email (e.g., where it came from).

**5.     The trial court grants summary judgment**

On June 27, 2023, the trial court held a hearing and heard oral argument on defendants' motion for summary judgment. Shabazz's counsel argued, in pertinent part, that defendants had "video evidence" showing Shabazz "was not the only person" who was "in arm's length of the area where the vial was allegedly placed." Counsel further asserted, "The video shows Mr. Shabazz working, walks past the area where they believe the vial was, you clearly can see that he did not take anything from the -- from the mobile desk. He simply walks past it and comes back." Counsel did not play the video at the hearing or explain to the court how it could identify the various individuals shown over the course of the video. Nor did counsel direct the court to the specific place(s) in the video that he was referencing. The video Shabazz lodged in this court is 43 minutes long.

After taking the matter under submission, the trial court issued a five-page ruling granting summary judgment. On July 24, 2023, the court entered judgment in favor of defendants.

## DISCUSSION

Relying primarily on the surveillance video he lodged in this court, Shabazz contends he raised a triable issue of material fact as to whether the investigation and suspension "were illegitimate" and whether defendants' "actions were pretextual on account of [his] race which substantially prejudiced his rights." He does not contend defendants failed to meet their initial burden on summary judgment.

13

## A. Standard of Review and Appellate Presumptions

A trial court shall grant summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant may establish a right to summary judgment by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the moving defendant has satisfied this burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to each cause of action. (*Ibid.*) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

To prevail on a motion for summary judgment in an action brought under FEHA, a defendant employer initially has the burden to show "either that (1) plaintiff could not establish one of the elements of the FEHA claim, or (2) there was a legitimate, nondiscriminatory reason for its decision to [take some adverse employment action]." (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1247, citing *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355-356.) Under this framework, "the employee must first establish a prima facie case of unlawful discrimination or retaliation [citation]; next, the employer bears the burden of articulating a legitimate reason for taking the challenged adverse employment action [citation]; and finally, the burden shifts back to the employee to demonstrate that the employer's proffered legitimate reason is a pretext for

14

discrimination or retaliation [citation]." (*Scheer v. Regents of the University of California* (2022) 76 Cal.App.5th 904, 910.)

We view the evidence in the light most favorable to the party opposing summary judgment and draw all reasonable inferences in favor of that party. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1005.) Our review is de novo. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.)

A judgment is presumed correct and reversible error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "Though summary judgment review is de novo, review is limited to issues adequately raised and supported in the appellant's brief." (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125.) " ' "It is not the function of this court to comb the record looking for the evidence or absence of evidence to support [a party's] argument." ' " (*Garcia v. Seacon Logix, Inc.* (2015) 238 Cal.App.4th 1476, 1489.) Appellants must "point out portions of the record that support the position taken on appeal. The appellate court is not required to search the record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.)

**B.**    **The Surveillance Video, As Presented to this Court, Does Not Establish a Triable Issue of Material Fact**

With respect to each cause of action at issue on appeal, Shabazz argues the surveillance video is the key piece of evidence that establishes a triable issue of material fact. Throughout his opening appellate brief, he indicates that other evidence he (untimely) submitted in the trial court raises a triable issue of material fact when considered in conjunction with the video.

15

We note there is nothing in the record explaining how Shabazz came to be in possession of the video or stating that the video he lodged in this court is the same video hospital staff reviewed as part of the investigation. Nor do we have any assurance that the video before us is the same video Shabazz referenced at the hearing on the motion for summary judgment. We also note that Shabazz asks us to review the video in a vacuum, without a timely filed response to defendants' separate statement of undisputed material facts and accompanying written evidence.

Notwithstanding these procedural defects, we reviewed the 43-minute video Shabazz provided. It is low-resolution, and significant portions are completely distorted or blurred by pixelation that covers almost the entire video frame. This significant distortion and other visual interference occurs every few seconds, lasting for a few seconds, such that it is not possible to continuously track the movement of any person or object.

Shabazz points to nothing in the record—a declaration, deposition testimony, a statement by counsel—that could aid us in identifying the many individuals in the video. For example, we have no way of knowing which of several women in the video is Nurse Krol.

In his opening appellate brief, Shabazz asserts, "[A] review of the video shows a number of individuals near the workstation on wheels [WOW] who were not Black, who were never suspected of theft, and were never questioned." In support of this assertion, he cites to the notice of lodging he filed in the trial court, which describes the exhibit as a "flash drive with video of incident" and provides no other description of the video. Multiple WOWs appear in the video, and we can only speculate as to which is the

16

WOW in question, based on the evidence before us.  At oral argument in this appeal, Shabazz's counsel described the general location where he believes the WOW in question was situated in the video.  Statements by counsel at oral argument are not evidence, and we do not rely on them to establish facts.  (See *Zolly v. City of Oakland* (2022) 13 Cal.5th 780, 796.)

At the hearing on the motion for summary judgment, Shabazz's counsel indicated he could identify the point in the video showing where Shabazz and others were located after Krol allegedly set down the vial of morphine.  Counsel did not share that specific information with the trial court.  At oral argument in this court, Shabazz's counsel identified by timestamp two short clips of the 43-minute video that he asserts show unidentified individuals walking past an unattended WOW.  Even if counsel's statements were evidence that we could consider—which they are not—these clips shed no light on Shabazz's allegations of mistreatment.  There is no evidence in the record that places these clips in context.  We cannot determine whether these individuals walked past the WOW before or after Krol allegedly misplaced the vial.

Gardner stated in his declaration in support of the summary judgment motion that when he reviewed a surveillance video, he observed that Krol's "body language suggested concern and disbelief as to where the morphine went."  Again, we can only speculate as to the place in the video where he might have observed that, assuming the video he reviewed is the same as the one before us.

Shabazz relies on the video to establish a triable issue of material fact as to his assertions that there were other people in the emergency department who could have taken the vial of

17

morphine after Krol set it down, but defendants targeted and suspended him because of his race, ethnicity, sex, or gender. He acknowledges that these assertions are central to each of his causes of action. However, due to the visual distortions in the video footage, and a lack of evidence identifying the individuals in the video or the pertinent moments of the video, we have no alternative but to conclude the video does not establish a triable issue of material fact defeating summary judgment. There is no declaration or deposition testimony in the record that provides the necessary evidentiary context for the video.[5]

## C. The CBA and Payroll Records Do Not Show a Triable Issue of Material Fact

Shabazz maintains that his suspension violated the CBA, and that "[t]his violation itself evidences pretextual treatment." As explained above, the payroll records defendants submitted as part of the summary judgment motion contradict Shabazz's claim that he was "held in unpaid investigatory suspension for more than ten (10) calendar days," as prohibited by the CBA. The records show he received a payroll deposit nine days into his

---

[5] We note that Shabazz's own (late-filed) declaration does not provide any guidance to assist us in deciphering the video. He describes the video he viewed during the investigation (which he does not identify as the video lodged in this court) as "extremely distorted" and states generally that it showed "many other people who passed by the WOW." Incidentally, he stated throughout his late-filed response to defendants' separate statement of undisputed material facts that it is "undisputed" that, "Other than the nurse who reported the missing morphine, Plaintiff was understood to be the only person near the WOW and within arm's reach of the morphine when it disappeared."

18

suspension, and he was paid for all pay periods that coincided with his suspension. If he believes there was something irregular about his payroll deposits, he does not explain the issue. For example, he does not specify the date he should have been paid for the missed shifts had he worked them. Thus, we cannot determine based on the record before us whether his pay was late, let alone whether there was a violation of the CBA.

We decline to consider Shabazz's declaration as evidence on the issue of whether his suspension violated the CBA because the declaration was not timely filed and Shabazz does not properly challenge the order denying him relief from the untimely filing, as discussed above. Moreover, such an "uncorroborated and self-serving declaration[]" may not defeat a summary judgment motion. (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.)[6] In any event, even if Shabazz could show a violation of the CBA, he points to no evidence establishing a triable issue of material fact that the violation was connected to his race, ethnicity, sex, or gender.

## D.     The Emails Were Not Timely Submitted to the Court

Shabazz references purported emails from Gardner to other hospital employees in support of his assertion that the hospital

---

[6] In the declaration, he makes the same assertion he makes in his briefing: "I was placed on unpaid suspension on December 12, 2018, for twenty-seven (27) days. I did not receive any payment until after I was cleared to come back to work on January 7, 2019." As explained in the factual background section of this opinion, the record shows Shabazz received a payroll deposit to his bank account on December 21, 2018, and he clocked in and out of work on January 4, 2019.

should have conducted its investigation as to Krol in a different manner than it did.  Shabazz's counsel attached the emails to his declaration without explaining the authenticity of or foundation for the emails.  As with Shabazz's other written evidence, the emails were not timely filed in the trial court, and we do not consider them here.

## E.    Conclusion

For all the foregoing reasons, Shabazz has not demonstrated the trial court erred in granting summary judgment.  He makes clear in his appellate briefing that the keystone of his case is the surveillance video, and it is the lens through which all other evidence must be viewed.  As presented to this court, the video is incomprehensible and does not establish a triable issue of fact.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover costs on appeal.

NOT TO BE PUBLISHED


M. KIM, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.

20